# In the United States Court of Federal Claims

No. 18-1292C
(Filed May 22, 2024)

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                          *
DANUTA YSLA,                              *
HENRIETTA HARGRESS DAVIS,                 *
GLORIYADI ECHEVARRIA,                     *
ARLENE FRANCES HOBBS,                     *
TIERRA L. KELLY,                          *
JULIA M. MULDROW,                         *
on behalf of themselves and              *
all others similarly situated,           *
                                          *
                    Plaintiffs,           *
                                          *
        v.                                *
                                          *
THE UNITED STATES,                        *
                                          *
                    Defendant.            *
                                          *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

  *Ira M. Lechner*, with whom were *Roger J. Marzulla* and *Nancie G. Marzulla*, Marzulla Law, LLC, all of Washington, D.C., for plaintiffs.

  *P. Davis Oliver* and *David M. Kerr*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and Claudia Burke, Assistant Director, all of Washington, D.C. for defendant.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

  The plaintiffs in this case, current and former employees of the Department of Veterans Affairs (VA), on behalf of themselves and other similarly-situated VA employees, seek back pay associated with days on which they have taken annual, sick, or nine other types of authorized leave, or were excused from work due to a holiday. They claim entitlement to the additional pay they would have received for working night or Saturday shifts, or for working regularly-scheduled overtime hours, had they not been on paid leave. The government contends that the VA, by amending provisions in its handbooks, has limited this additional pay when work is

not performed. Both sides agree that the government's liability in the present matter may be determined as a matter of law (prior to considering the certification of a class), with the plaintiffs moving for partial summary judgment as to the issue of liability and the defendant cross-moving for summary judgment. For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART the plaintiffs' motion, and GRANTS-IN-PART and DENIES-IN-PART the defendant's motion.

## I. BACKGROUND

This case revisits a subject that the Court previously addressed in *Curry v. United States*, 66 Fed. Cl. 593 (2005). Danuta Ysla, Henrietta Hargress Davis, Gloriyadi Echevarria, Arlene Frances Hobbs, Tierra L. Kelly, and Julia M. Muldrow (collectively "plaintiffs") work or worked for the VA as registered nurses (RNs), physician assistants (PAs), and expanded-function dental auxiliaries (EFDAs). Compl. ¶¶ 1, 22; *see also* 38 U.S.C. § 7401(1) (authorizing the appointment of RNs, PAs, and EFDAs).[1] By statute, these healthcare professionals are entitled to receive additional pay when working night shifts (a ten percent premium), weekend shifts (a twenty-five percent premium) and overtime (a fifty percent premium). *See* 38 U.S.C. § 7453(b), (c), (e)(1); *id.* § 7454(a). In *Curry,* the Court concluded that VA employees holding these positions were entitled to additional pay for night shifts and Saturday shifts which were not worked because annual, sick, military and court leave was taken. *Curry,* 66 Fed. Cl. at 608.[2]

The Federal Circuit had previously held, in *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987), that the four leave with pay statutes at issue in *Curry* --- annual leave, 5 U.S.C. § 6303; sick leave, 5 U.S.C. § 6307; court leave, 5 U.S.C. § 6322; and military leave, 5 U.S.C. § 6323---entitled federal employees to receive the "customary and regular pay" they would have received had they not been on leave, including premium pay such as for overtime work. *Lanehart*, 818 F.2d at 1583. The Federal Circuit applied this holding in *Armitage v. United States*, 991 F.2d 746 (Fed. Cir. 1993), and determined that federal employees taking annual or sick leave from a Sunday shift were entitled to the Sunday premium pay they would otherwise have received under 5 U.S.C. § 5546(a)---as the premium pay provision did "not explicitly preclude such pay for authorized leave" and the leave with pay statutes "preclude any reduction in pay." *Armitage*, 991 F.2d at 750–51. Four years later Congress included a provision in an appropriations act that barred all federal

---

[1] The third category, EFDAs, are also sometimes referred to as "[e]xpanded-duty dental auxiliaries." *See* 38 U.S.C. § 7421(b)(7); *Curry*, 66 Fed. Cl. at 604.

[2] That case also involved another category of medical professionals, called "hybrids" because their employment was governed is some respects by title 5 and in other respects by title 38. *See Curry*, 66 Fed. Cl. at 595 n.4. No hybrid is participating in the present litigation.

agencies from paying Sunday premium pay when Sundays are not actually worked. *See Curry*, 66 Fed. Cl. at 596. The VA misinterpreted this provision to bar Saturday premium pay when paid leave was taken, *id.* at 600–01, and did not otherwise eliminate the entitlement to this premium pay through use of the regulatory authority granted under 38 U.S.C. § 7421, *see Curry*, 66 Fed. Cl. at 606. On the other hand, a provision in VA Handbook 5007 concerning the nighttime premium clearly limited its receipt during annual or sick leave to circumstances when fewer than eight annual or sick leave hours were taken in a pay period. *Curry*, 66 Fed. Cl. at 604–06.

Plaintiffs now challenge the VA's application of this eight-hour rule limiting the nighttime premium, as well as the policy of not paying the Sunday or overtime premia when RNs, PAs, and EFDAs are on leave or excused absence. *See* Compl. ¶¶ 1–4, 12–14, 16–17, 28, 41–43, 46–48. In addition to the annual, sick, military and court leaves at issue in *Curry*, plaintiffs here contend that the full premium pay portions of their paychecks were not received when they have taken seven other types of paid leave: absence of veterans to attend funeral services, 5 U.S.C. § 6321; absence in connection with funerals of immediate relatives in the Armed Forces, 5 U.S.C. § 6326; absence in connection with serving as a bone-marrow or organ donor, 5 U.S.C. § 6327; disabled veteran leave, 5 U.S.C. § 6329; administrative leave, 5 U.S.C. § 6329a; investigative and notice leave, 5 U.S.C. § 6329b; and weather and safety leave, 5 U.S.C. § 6329c. Compl. ¶¶ 1, 5, 10, 16. Plaintiffs also allege that they were denied portions of their premium pay when excused from work due to a holiday, contrary to 5 U.S.C. § 6104(3). *See* Compl. ¶¶ 3, 46–48. They maintain that two revisions to VA Handbook 5007, issued on March 12, 2012 (VA Handbook 5007/43) and March 24, 2014 (VA Handbook 5007/47), which purported to limit the receipt of additional pay when they are on paid leave, cannot properly be considered regulations with the power to alter their entitlement to this pay. *Id.* ¶¶ 18–19, 39.

In their motion for summary judgment, plaintiffs maintain that the VA Secretary's power to "prescribe by regulation the hours and conditions of employment and leaves of absence of" RNs, PAs and EFDAs, 38 U.S.C. § 7421(a), does not authorize reductions in the additional pay required by 38 U.S.C. §§ 7453–54, when these employees are on paid leave. Pls.' Mot. for Partial Summ. J. (Pls.' Br.), ECF No. 12, at 6–8; Pls.' Reply & Opp'n to Def.'s Cross-mot. (Pls.' Reply), ECF No. 15, at 8–10. They also argue that the Handbook revisions are not binding regulations but are instead less formal agency interpretations which are not entitled to any deference. Pls.' Br. at 8–10; Pls.' Reply at 10–11. Plaintiffs note that the *Curry* decision required "a regulation that speaks to this issue with clarity" for pay to be reduced while employees are on leave. Pls.' Reply at 3 (quoting *Curry*, 66 Fed. Cl. at 606). And they contend that the Handbook provisions limiting the receipt of additional pay when RNs, PAs and EFDAs are on paid leave or excused absence are contrary to the Congressional purpose animating the relevant sections of title 38, which was to enable the VA to attract and keep qualified medical

professionals---a departure which, they argue, has not been properly justified.  Pls.' Br. at 11-12; Pls.' Reply at 13–15.[3]

The government's cross-motion for summary judgment contends that under the 38 U.S.C. § 7421(a) authority to establish the conditions of leaves of absences, the VA properly limited the availability of night and weekend premia when plaintiffs are on paid leave.  Def.'s Opp'n to Pls.' Mot. & Cross-mot. for Summ. J. (Def.'s Br.), ECF 14, at 2, 4–6; *see also* Def.'s Reply to Pls.' Resp. (Def.'s Reply), ECF No. 22, at 2–4, 13–15.  Defendant also argues that the Handbook provisions at issue deserve persuasive deference because they do not contradict any statutes and are consistent with the policy choices of Congress concerning analogous pay premia.  Def.'s Br. at 9.  It notes that the notice-and-comment process of the Administrative Procedure Act (APA) is not required for agency personnel matters under 5 U.S.C. § 553(a)(2), and maintains that the Handbook provisions are binding regulations.  Def.'s Reply at 9–11.

At the Court's request, *see* Order (Mar. 16, 2023), ECF No. 39, the parties filed supplemental briefs addressing whether the arbitrary and capricious review employed by the Federal Circuit in *Balestra v. United States*, 803 F.3d 1363, 1373–74 (Fed. Cir. 2015) and in *Dominion Resources, Inc. v. United States*, 681 F.3d 1313, 1319 (Fed. Cir. 2012), should apply to the Handbook provisions at issue in this matter.  Neither side thought so.  *See* Pls.' Suppl. Mem., ECF No. 40; Def.'s Suppl. Br., ECF No. 41; Pls.' Reply to Gov't's Suppl. Br., ECF No. 42; Def.'s Resp. to Pls.' Suppl. Br., ECF No. 43.  With the motions fully briefed and oral argument heard, the matter is now ripe for determination.

## II.  DISCUSSION

### A.  Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also* RCFC 56(a).  An outcome-determinative fact is a material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party may show the "absence of evidence to support the non-moving party's case."  *Celotex*, 477 U.S. at 325.  The issues of liability in this case turn solely on questions of the

---

[3]  In their briefing, plaintiffs also suggest that they are claiming the right to receive the one hundred percent premium for working holidays, *see* 38 U.S.C. § 7453(d), when taking leave from work on such days, *see* Pls.' Reply at 14–15.  During oral argument, they clarified that they were not seeking this premium.  Tr. (Oct. 21, 2019) (Tr.), ECF No. 27, at 48–49.

interpretation of statutes, regulations, and agency manuals which are questions of law, *see Edenfield v. Dep't of Veterans Affs.*, 54 F.4th 1357, 1360 (Fed. Cir. 2022), that may be decided on a motion for summary judgment, *see Santa Fe Pac. R.R. Co. v. United States*, 294 F.3d 1336, 1340 (Fed. Cir. 2002).

## B. Analysis

As was true in *Curry*, this case presents a seemingly straightforward question:  Do employees who take some paid leave get the same pay they would have received had they worked the whole week?  The matter is complicated by the presence of three types of premium pay and twelve types of paid leave or excused absence.  It is further complicated by the manner chosen by the VA to implement its paid leave regime---the piecemeal issuance of changes to various provisions in two informal handbooks.  And to top things off, the interweaving of provisions from two separate titles of the U.S. Code is critical to the decision.

First, we start with the basics.  Title 5 contains the statutes governing federal employees generally, and includes provisions for overtime pay, night pay, and some weekend pay.  *See* 5 U.S.C. §§ 5542 (overtime), 5545 (nightwork), 5546 (Sunday pay).  By their own terms, these premium pay provisions would apply to the plaintiffs in this case, as they cover employees in Executive agencies.  *See* 5 U.S.C. § 5541(1)–(2).  But title 38 contains specific provisions for "additional pay" for RNs, PAs and EFDAs employed by the VA, which includes additional pay for service performed during night and weekend shifts and for overtime.  38 U.S.C. §§ 7453(b), (c) & (e) (additional pay for RNs), 7454 (additional pay for PAs and EFDAs).  While there are some differences between the title 5 and title 38 regimes, the conflicts in these provisions are governed by another provision in title 38, which states (somewhat ungrammatically):

> Notwithstanding any other provision of law, no provision of title 5 . . . which is inconsistent with any provision of . . . this chapter shall be considered to supersede, override, or otherwise modify such provision of . . . this chapter except to the extent that such provision of title 5 . . . specifically provides, by specific reference to a provision of this chapter, or such provision to be superseded, overridden, or otherwise modified.

38 U.S.C. § 7425(b) (2018); *see Curry*, 66 Fed. Cl. at 596.[4]

Title 38 says little about paid leave for RNs, PAs and EFDAs.  The twelve forms of paid leave or excused absence that are the basis for this lawsuit originate

---

[4]  A 2021 amendment to this subsection included a reference to a new subsection (c) that was concurrently added to the section, which is not relevant to this matter.  *See* 38 U.S.C.A. § 7425(b) (2022).

in title 5, which defines employee in a way that would apply all twelve provisions to PAs and EFDAs and ten of the twelve to RNs.  *See* 5 U.S.C. §§ 2105(a) (defining employee for title 5 generally), 6301(2)(v) (excluding VA nurses for purposes of annual and sick leave).  While there are no "inconsistent" provisions in title 38, that title does contain a section which states:

> Notwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment and leaves of absence of employees appointed under any provision of this chapter in positions in the Veterans Health Administration listed in subsection (b).

38 U.S.C. § 7421(a) (2018).  The referenced subsection (b) positions include RNs, PAs, and EFDAs.  *See id.* § 7421(b)(5)–(7).

The VA Secretary (or his designee) did not issue formal regulations through a notice-and-comment process to implement additional pay and paid leave policies, but rather used agency manuals.  One, called VA Handbook 5007, concerns "Pay Administration," and contains a chapter regarding plaintiffs' additional pay for night and weekend shifts.  *See* VA Handbook 5007, Part V, Chapter 6, ¶ 1.a.–.b.  Another, called VA Handbook 5011, covers "Hours of Duty and Leave," with different chapters focusing on the leave policies of title 38 employees (such as the plaintiffs), and all others.  *See* VA Handbook 5011, Part III, Chapters 2 (title 5 employees) & 3 (title 38 employees).

Two handbook provisions are of particular significance to this matter.  Regarding the additional pay for night shifts, VA Handbook 5007 was amended to read:

> (1) When on annual or sick leave, a nurse, PA or EDFA shall be entitled to night differential pay otherwise appropriate, provided the total amount of such leave in a pay period, including both night and day hours, is fewer than 8 hours.

> (2)  When not required to perform service because of a holiday or the day observed as a holiday, a nurse, PA or EFDA shall be entitled to night differential pay otherwise appropriate.

VA Handbook 5007, Pt. V, Ch. 6, ¶ 1.a.  Concerning the weekend premium, the same handbook paragraph contains the following explanation:

> Weekend pay is payable only during periods when work is performed. Weekend pay is therefore not payable for periods of paid leave or excused absence including annual leave, sick leave, compensatory time

off, credit hours military leave, court leave excused absence on a holiday, or time off as an incentive or performance award, etc.

*Id.* ¶ 1.b.[5]

Plaintiffs contend that, because of these provisions, the VA has improperly reduced the size of their paychecks when they take twelve different types of paid leave or excused absence. Before we turn to an interpretation of these provisions, which will also require consideration of the handbook provisions concerning paid leave, the Court must first consider plaintiffs' arguments that these provisions exceed the power delegated to the Secretary, are not proper regulations, and lack sufficient justification in light of congressional purpose.

### *1. Does 38 U.S.C. § 7421(a) Authorize Regulation of Rates of Pay for Leaves of Absence?*

Section 7421 grants the VA Secretary authority, "[n]otwithstanding any law," to "prescribe by regulation the hours and conditions of employment and leaves of absence of employees." 38 U.S.C. § 7421(a). Plaintiffs stress that this subsection speaks only of "hours," "conditions of employment," and "leaves of absence" and insist that pay does not come within any of these three statutory terms. *See* Pls.' Br. at 8. They note that Congress specifically provided, in the code section concerning RNs' additional pay, that the VA Secretary could "increase the rates of additional pay," but failed to similarly provide for reductions in these rates. *Id.* (quoting 38 U.S.C. § 7453(j)(1)).

Plaintiffs argue for a narrow construction of the section 7421 authority, relying on the Federal Circuit's decision in *James v. Von Zemenszky*, 284 F.3d 1310 (Fed. Cir. 2002). *See* Pls.' Reply at 8–10. In that case, the Circuit interpreted "conditions of employment" to "not encompass staffing adjustments resulting in employee separations." *Von Zemenszky*, 284 F.3d at 1317. The term was narrowed due to its association with "hours" and "leaves of absence," and was given the same

---

[5] These amendments were presumably enacted as part of change 43 to Handbook 5007, issued on March 12, 2012. *See* Compl. ¶¶ 18, 39; App. to Def.'s Suppl. Br. (Romba Decl.), ECF No. 41-1, at 2 ¶ 4. Because of the manner in which the VA archives and replaces handbook provisions, this particular change was not made available to (nor found by) the court. *See* Def.'s Notice, ECF No. 25, at 1 (identifying https://www.va.gov/vapubs/search_action.cfm?dType=2 as the link to the publication page containing VA Handbooks). The only alteration of this provision in change 47, issued on March 24, 2014, was the insertion of a sentence, irrelevant for our purposes, concerning the divisor to be used to determine basic hourly rates of pay. *See* VA Handbook 5007/47 Transmittal Letter; *see also* App. 1 to Def.'s Br., ECF No. 14 at 12 (sentence in brackets).

meaning for both sections 7421 and 7422 of title 38. *Id.* The latter section made the regulatory authority of the former "subject to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5." 38 U.S.C. § 7422(a). Looking to the referenced chapter's definition of "conditions of employment" for purposes of collective bargaining, the Federal Circuit determined that reductions-in-force were excluded because "such matters are specifically provided for by Federal statute." *Von Zemenszky*, 284 F.3d at 1317 (quoting 5 U.S.C. § 7103(a)(14)(C)). Because section 7422(b) specifies that the collective bargaining of VA health professionals "may not cover . . . the establishment, determination or adjustment of employee compensation under this title," plaintiffs argue that such matters are also excluded from the Secretary's regulatory authority. Pls.' Reply at 9–10 (quoting 38 U.S.C. § 7422(b)); *see also* Tr. at 11.[6]

The government notes that the Court, in *Curry*, had previously found that section 7421(a) gave the VA Secretary broad authority over leave, including how much, if any, pay would be received by RNs, PAs and EFDAs. Def.'s Br. at 8 (citing *Curry*, 66 Fed. Cl. at 605–06). Regarding section 7422(b), defendant argues that it limits collective bargaining rights and not the Secretary's regulatory authority. *See* Def.'s Reply at 14–15.

The Court is not persuaded that its previous interpretation of the section 7421(a) authority was incorrect, and reaffirms the *Curry* determination that this includes setting rates of leave pay. *See Curry*, 66 Fed. Cl. at 605–07. The *Von Zemenszky* opinion says nothing about whether the establishment of pay rates comes within this authority, and unlike the process for determining the positions to be eliminated at an agency, pay is certainly a matter closely associated with the "hours and conditions of employment and leaves of absence of employees," 38 U.S.C. § 7421(a).

Moreover, plaintiffs have not identified any reason why the 5 U.S.C. § 7103(a)(14) definition of "conditions of employment" employed in *Von Zemenszky* would exclude compensation. But even if it did, the regulatory authority of the Secretary is broader than just prescribing "conditions of employment," and reaches the separate term "leaves of absence" --- or, more properly, "conditions of . . . leaves of absence." 38 U.S.C. § 7421(a). It is hard to see how the pay, if any, that is connected with leaves of absence is not among its conditions. *Compare* 5 U.S.C. § 6303 (stating "[a]n employee is entitled to annual leave with pay") *with* 5 U.S.C.

---

[6] Plaintiffs also cite *American Federation of Government Employees v. Nicholson*, 475 F.3d 341 (D.C. Cir. 2007), *see* Pls.' Reply at 10, a case which concerned whether RNs' entitlement to night premium pay was excluded from collective bargaining, and not whether it involved conditions of employment.

§ 6382(c) (stating "[e]xcept as provided in subsection (d), leave granted under subsection (a) shall be leave without pay").[7]

Nor can the Court find that the carve-out of matters concerning employee compensation from collective bargaining, in section 7422(b), means that the Secretary may not issue regulations regarding employee compensation under section 7421(a).  His regulatory authority is limited by collective bargaining rights, and if the latter are themselves restricted, this necessarily expands that authority. Additionally, the section 7422(b) exclusion of matters concerning employee compensation would have been unnecessary if such matters did not otherwise fall in the category of "conditions of employment" subject to collective bargaining.  This provision is not a special definition of "conditions of employment," but rather a special restriction on collective bargaining.  *See* 38 U.S.C. § 7422(b).

Finally, the authority given to the Secretary to increase RNs' additional pay under section 7453(j) does not suggest the lack of authority to set pay rates under section 7421(a).[8]  The former provision does not require the Secretary to act by regulation, and can be used for just a single facility, or on a geographic basis, if certain findings are made.  *See* 38 U.S.C. § 7453(j)(1)–(2).  Thus, the power to set rates under section 7421(a), by regulation, would not render this other provision superfluous.  This leads us naturally into plaintiffs' next argument, which questions whether the issuance of handbook provisions can be considered actions "by regulation" under section 7421(a).

---

[7]  Indeed, if setting the rate of pay were not encompassed within the section 7421(a) authority, this would be problematic, to say the least for RNs, who are not entitled to paid annual and sick leave under title 5.  *See* 5 U.S.C. § 6301(2)(v); *Curry*, 66 Fed. Cl. at 604–05.  No other potential source of VA authority to provide paid annual or sick leave to RNs has been identified.

[8]  Although the matter is not presented in this case, the Court doubts that the Secretary's regulatory authority under section 7421(a) can be used to reduce the additional pay to which RNs, PAs, and EFDAs are entitled for hours actually worked, notwithstanding the "[n]otwithstanding any law, Executive order, or regulation" language, as this provision and sections 7453 and 7454 were all enacted (or reenacted) as part of the same law.  *See* Dep't of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. 102-40, §§ 202; 401(b)(4), 105 Stat. 187, 200, 221 (May 7, 1991).  The specific requirement that the Secretary "shall prescribe by regulation standards for compensation and payment under" section 7454, extending additional pay to PAs and EFDAs when work is performed, would seemingly preclude such a regulation reducing their pay.  *See* 38 U.S.C. § 7454(c).

- 9 -

*2.  Are the VA Handbook Provisions Regulations for Purposes of Section 7421(a)?*

Plaintiffs argue that the issuance of provisions in VA Handbook 5007 is not the same thing as acting "by regulation," and thus these provisions cannot utilize the section 7421(a) authority to limit receipt of additional pay when health professionals are on leave.  Pls.' Br. at 8–10; Pls.' Reply at 10–11.  They maintain that binding regulations can only be the product of notice-and-comment rulemaking, *see* Pls.' Reply at 11 & n.37 (citing *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1149 (D.C. Cir. 2002)), and note cases in which procedures or policies contained in employee manuals or handbooks were found not to bind an agency, *see* Pls.' Br. at 8–9 (discussing *Khuri v. United States*, 154 Ct. Cl. 58, 64–65 (1961); *Donovan v. United States*, 433 F.2d 522, 523–24 (D.C. Cir. 1970)).

For this argument, plaintiffs again rely on the *Von Zemenszky* opinion, in which the Federal Circuit found that another VA handbook and a VA directive concerning agency staff adjustments did not merit deference under *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *See* Pls.' Br. at 9 (citing *Von Zemenszky*, 284 F.3d at 1318–19); Pls.' Reply at 10–11 (same).  These documents, when offered as interpretations of title 38 provisions, were merely "accorded a lesser degree of deference 'proportional to their power to persuade,'" *Von Zemenszky*, 284 F.3d at 1319 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (cleaned up)), because they were "akin to 'interpretations contained in policy statements, agency manuals, and enforcement guidelines,'" *id.* (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)), and not the product of notice-and-comment rulemaking.

The government notes that the Federal Circuit has recognized that when a government agency's issuance "is a personnel manual, it does not necessarily lose its status as a regulation simply because it was not promulgated and published in accordance with the requirements of the APA."  Def.'s Reply at 10 (quoting *Hamlet v. United States*, 63 F.3d 1097, 1103 (Fed. Cir. 1995)).  Agencies, after all, are not obligated to use notice-and-comment procedures when regulating matters related to agency management or personnel.  *See Hamlet*, 63 F.3d at 1103 (citing 5 U.S.C. § 553(a)(2)).  The rulemaking section of the APA contains a specific exception for such matters.  5 U.S.C. § 553(a)(2) (stating the "section applies . . . except to the extent that there is involved . . . a matter relating to agency management or personnel").  Accordingly, the Federal Circuit has adopted a multi-factor test with several considerations for determining if a provision in an agency personnel manual or handbook is treated as a binding regulation.  *See Hamlet*, 63 F.3d at 1105.

It has not been seriously contended that the handbooks at issue in this case are outside of the "agency management or personnel" exception.  *See Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1342 (Fed. Cir. 2005) (quoting Attorney General's explanation that the exception covered "rules as to leaves of absence").  The Federal

Circuit has recognized that these excepted "matters may include determinations of employee bonuses, the promulgation of a personnel manual or handbook, and hiring practices." *Conyers v. Sec'y of Veterans Affairs*, 750 F. App'x 993, 997 (Fed. Cir. 2018); *see also Favreau v. United States*, 317 F.3d 1346, 1359 (Fed. Cir. 2002) (holding that memoranda setting bonus recoupment policies fit within the personnel exception of section 553).[9]  Accordingly, the VA's failure to use notice-and-comment rulemaking is not fatal to the handbook provisions' status as regulations.  With no special definition of "regulation" contained in title 38, *see* 38 U.S.C. § 101, the Court turns to the *Hamlet* test to determine whether the handbook provisions can be considered regulations with force of law.

As the Federal Circuit has explained:

[R]egardless of whether a provision of an agency's personnel manual or handbook was published or promulgated under the standards set out in the APA, such provision is a regulation entitled to the force and effect of law if (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute.

*Hamlet*, 63 F.3d at 1105.

The government believes that all these prongs are met by the relevant provisions in VA Handbook 5007.  *See* Def.'s Reply at 10–11.  The Court agrees, with one caveat.  As discussed above, the Secretary has the authority to promulgate regulations under 38 U.S.C. § 7421 addressing leaves of absence, including conditions such as the pay associated with them.  Therefore, the first prong is met. Notice-and-comment procedures do not apply to such provisions, and plaintiffs have not identified any other alleged procedural failures regarding the issuance of VA Handbook 5007 that could invalidate its contents.[10]  Accordingly, the second prong is satisfied.  Concerning the third prong, defendant points to mandatory statements in the provisions at issue, such as that plaintiffs "shall be entitled to night

---

[9]  The Federal Circuit has also recognized an exception to this exception, not relevant here, when a rule "is primarily for the public benefit." *Tunik*, 407 F.3d at 1344.

[10]  As it was not raised by the parties, the Court need not decide whether the 38 U.S.C. § 501 requirement, that the legal authority underpinning VA regulations "shall appear immediately following each substantive provision," was followed in the issuance of the relevant provisions.  *See* 38 U.S.C. § 501(b) (2018).

differential pay otherwise appropriate" and that "[w]eekend pay is payable only during periods when work is performed." *Id.* at 11.  In addition, VA Handbook 5007 expressly states its mandatory, regulatory nature.  At least since 2007, this handbook on its very first page stated it "provides Department of Veterans Affairs (VA) mandatory guidance and procedures for personnel appointed or designated under certain title 38 authorities" and noted:

> The policies on pay administration in this handbook pertaining to title 38 employees, including the extension of title 5 pay authorities to title 38 employees and title 38 hybrids, are authorizing regulations prescribed pursuant to the Secretary's authority under 38 U.S.C. 7421(a) and the Under Secretary for Health's authority under 38 U.S.C. 7304.  Policies so promulgated under the authority of 38 U.S.C. are regulatory with no deviations, not expressly authorized herein, to be indulged.

VA Handbook 5007/30, Pt. I, ¶¶ 1, 3 (Dec. 6, 2007).[11]  The specific part containing the provisions at issue has since 2002 stated it "provides Department of Veterans Affairs mandatory guidance and procedures for determining additional and premium pay rates of pay, e.g., overtime pay, for personnel appointed or designated under certain title 38 authorities."  VA Handbook 5007, Pt. V, Ch. 1, ¶ 1 (Apr. 15, 2002).  Thus, the VA made its intentions clear regarding the binding nature of these provisions.[12]

Finally, there is the prong addressing whether a provision "contravene[s] a statute." *Hamlet*, 63 F.3d at 1105.  As a general matter, the section 7421 authority of the Secretary may be used to displace title 5 leave provisions which would otherwise apply by default. *See* 38 U.S.C. § 7421(a); *Curry*, 66 Fed. Cl. at 603.  The

---

[11]  The VA follows the curious practice of amending its handbooks through the issuance of changes, and replacing only the revised pages with amended ones bearing the date of issuance and notation reflecting the change (such as 5007/30) as headers on those pages.  In citing these provisions, the Court will henceforth note the issuance dates and change numbers, and when relevant will explain whether the cited provision is still in force.

[12]  The same is true for VA Handbook 5011, containing the provisions entitling the plaintiffs to paid leaves of absence. *See* VA Handbook 5011/12, Pt. I, ¶ 1 (Jan. 12, 2007) (stating it "contains instructions and mandatory procedures"); VA Handbook 5011/16, Pt. III, Ch. 1, ¶ 1.b(1) (Apr. 4, 2010) ("38 U.S.C., Section 7421, authorizes the Secretary to provide, by regulation, leaves of absence of employees covered by 38 U.S.C., chapters 73 and 74.  This part of the handbook is a regulation pursuant to 38 U.S.C., Section 7421.") (internal brackets omitted).  Thus, mandatory statements among these provisions will also be given the force and effect of law, when relevant.

wrinkle, though, is that section 7425 has a "notwithstanding any other provision of law" clause of its own, which recognizes that inconsistent provisions of title 5 will "supersede, override, or otherwise modify" provisions in chapter 74 of title 38 when the title 5 provision specifically references a provision of chapter 74.  38 U.S.C. § 7425(b).  Thus, a handbook provision which is stated as mandatory and would otherwise be a binding regulation could, even if proper upon issuance, come into conflict with subsequent legislation codified in title 5 which contains the appropriate specific reference to chapter 74.

Three statutes under which plaintiffs are claiming compensation have, since enactment on December 23, 2016, contained this specific reference: "Notwithstanding subsection (a) of section 7421 of title 38, this section shall apply to an employee described in subsection (b) of that section."  5 U.S.C. §§ 6329a(d), 6329b(i), 6329c(e) (2018).  A fourth statute was amended on September 7, 2018, to contain a similar reference.  *See* Veterans Providing Healthcare Transition Improvement Act, Pub. L. 115-238, § 2(a), 132 Stat. 2450 (Sept. 7, 2018) (adding 5 U.S.C. § 6329(d)(1)(B)).  All four state that such leave shall be "without loss or reduction in" pay.  *See* 5 U.S.C. §§ 6329(a), 6329a(a)(1)(A), 6329b(a)(7)(A), 6329b(a)(8)(A), 6329c(b).  As RNs, PAs and EFDAs are among the employees described in the referenced subsection, *see* 38 U.S.C. § 7421(b)(5)–(7), once effective, these statutes would insulate the plaintiffs from any effort by the VA to use section 7421 to reduce the pay they otherwise would have received had they worked and not exercised their rights to take those forms of leave.

Accordingly, statements such as "[w]eekend pay is payable only during periods when work is performed," VA Handbook 5007, Pt. V, Ch. 6, ¶1.b, whatever their meaning and reach when issued, are contravened by these statutes and would thereby lose the force and effect of law (as least insofar as those types of leave are concerned).  As this is a matter that is tied inextricably with the interpretation of the handbook provisions, the Court will defer further elaboration until that discussion, below.[13]  For present purposes, it is enough to conclude that the handbook provisions are binding regulations, except to the extent they conflict with any applicable statutory provisions (not themselves displaced by the reach of section 7421(a)).[14]

---

[13]  The Court notes that defendant has seemingly conceded that, insofar as they may be considered interpretive, the handbook provisions do not merit *Chevron* deference.  *See* Def.'s Br. at 5, 9 (arguing for persuasiveness of provisions).

[14]  Plaintiffs attempt to distinguish *Hamlet* as not finding that pay can be determined by a handbook issued without notice-and-comment rulemaking.  *See* Tr. at 38–39.  But *Hamlet* did not categorically rule this out, and instead turned on a

### 3.  Does the Legislative Purpose Underpinning the Additional Pay Statutes Preclude a Reduction in Pay when Plaintiffs Take Paid Leave?

Plaintiffs contend that the VA policies of reducing or eliminating additional pay when they take various types of leave are improper because the policies are contrary to the congressional purpose behind the act which created the additional pay provisions.  *See* Pls.' Br. at 11–12; Pls.' Reply at 13–14.  They quote snippets from opening statements of a House subcommittee chairman and of a minority party member of a Senate committee, from hearings focusing on the recruitment and retention of physicians and dentists.

The House member explained the purpose of his hearing was "to receive testimony about the problems related to the recruitment and retention of physicians and dentists" at the VA and noted "nothing we have done here can exceed in importance the issues of employing well-trained and motivated medical care delivery staff."  *Recruitment and Retention of Physicians and Dentists in the Dep't of Veterans Affairs: Hearing Before the Subcomm. On Hospitals and Health Care of the H. Comm. on Veterans' Affairs*, 101st Cong. (Serial No. 101-32) 1 (1989) (statement of Rep. Montgomery).  The senator stated "[i]f we want to continue to attract high caliber physicians and dentists, we must be sure to provide the necessary incentives." *VA Health Care Legislation: Hearing on S. 2701 & H.R. 4557 Before the S. Comm. on Veterans' Affairs*, 101st Cong. (S. Hrg. 101-1082) 1 (1990) (statement of Sen. Thurmond).  The legislation being considered did not at that time contain the additional pay provisions for RNs, PAs and EFDAs.  *See id.* 124–55 (text of S.2701), 156–209 (text of H.R. 4557).  These statements are nevertheless advanced as reflective of a purpose regarding medical personnel at the VA in general.  *See* Pls.' Br. at 11–12; Pls.' Reply at 14.

Similarly, plaintiffs cite a statement from the preamble of the enacted act, referring to the special pay provisions for physicians and dentists, as describing a legislative purpose applying to VA medical professionals generally.  Pls.' Br. at 11 & n.39; *but see* Dep't of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. 102-40, 105 Stat. 187 (May 7, 1991) (describing act as one "to improve the capability of the Department of Veterans Affairs to recruit and retain *physicians and dentists* through increases in special pay") (emphasis added).  The only textual provision that discussed this purpose was also confined to the special pay of physicians and dentists.  *See* 38 U.S.C. § 7431(a) (1992).  There is no basis to apply this purpose to other provisions of the act.

Nor can the legislative history cited by plaintiffs inform the interpretation of the relevant sections of title 38, for several reasons.  First, a version of section 7421

specific statute precluding backpay for a class of employees.  *See Hamlet*, 63 F.3d at 1106–1107.

was previously codified elsewhere in title 38, *see* 38 U.S.C. § 4108(a) (1988), and at the time of the Senate hearing was merely being re-proposed in combination with what would ultimately form the basis of section 7422, *see* S. Hrg. 101-1082, at 189. The statements of the individual members had nothing to do with the regulatory authority which preexisted these hearings, let alone what would become sections 7453 and 7454---drafts of which were not yet before the respective committees. Second, these statements are from individual members, and thus "[w]e are not presented with a legislative term of art which is defined in a conference report, the circumstance in which the use of legislative history might be understandable." *Bossenbroek v. Sec'y of Health & Hum. Servs.*, 169 Fed. Cl. 418, 428 (2024) (citing *Balestra v. United States*, 119 Fed. Cl. 109, 114 n.10 (2014), *aff'd* 803 F.3d 1363 (Fed. Cir. 2015)). And finally, any generic, non-textual purpose "cannot legitimately be employed by a court to add substantive guarantees or restrictions to the actual text enacted." *Id.* at 429. The Court does not find the "purposivism" approach to statutory interpretation to be proper. *Id.* (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 18–20, 56–58, 376 (2012)). The purposivism advanced by plaintiffs is particularly inapt, as we are supplied with the views of just two individuals, concerning a different aspect of the ultimate legislation, which in any event said nothing at all about the desirability or necessity of paid leave.

In a related vein, plaintiffs argue that the VA was required to provide an explanation of the purpose behind the change in its policy from the one mandated by the *Curry* decision. Pls.' Reply at 12–13. But that contention rests on the application of the APA, *see id.* at 13 & n.46 (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)), which plaintiffs subsequently disavowed, *see* Pls.' Suppl. Mem. at 4–5. In any event, as the notice-and-comment procedures of the APA do not apply to this matter concerning agency personnel, *see* 5 U.S.C. § 553(a)(2), the handbook provisions in question cannot be invalidated on the basis that they lack a "statement of their basis and purpose," *id.* § 553(c). As we shall see next, however, the VA's use of informal regulations, shorn of accompanying explanation or justification, does render problematic the interpretation of these regulations.

### *4. What Forms of Additional Pay are Plaintiffs Entitled to Under the Relevant VA Handbook Provisions for Each Type of Leave at Issue?*

With the preliminaries out of the way, the Court now turns to the ultimate issue at this stage of proceedings---the extent to which plaintiffs are entitled to additional pay when on paid leave or excused absence, under the relevant statutes and handbook provisions. To recap, four of the paid leave statutes apply to the plaintiffs in this case, and cannot be displaced by section 7421(a) regulations--- disabled veteran leave, 5 U.S.C. § 6329; administrative leave, *id.* § 6329a; investigative and notice leave, *id.* § 6329b; and weather and safety leave, *id.* § 6329c. All four provide that the leave is to be granted "without loss or reduction"

in pay.  *See id.* §§ 6329(a), 6329a(a)(1)(A), 6329b(a)(7)(A), 6329b(a)(8)(A), 6329c(b).
Two of the paid leave statutes would apply to PAs and EFDAs in the absence of
section 7421(a) displacement---annual and sick leave, 5 U.S.C. §§ 6303, 6307.  These
entitle employees to "leave with pay," which the Federal Circuit has interpreted to
"prevent any reduction in the customary and regular pay" which employees would
be entitled, including premium or additional pay.  *Lanehart*, 818 F.2d at 1583; *see
also Armitage*, 991 F.2d at 750–51.

      The other six statutes would apply to RNs, PAs, and EFDAs unless
inconsistent regulations are issued under section 7421(a).  Five of these rather
emphatically state that leave is without loss of or without reduction in pay, or both.
*See* 5 U.S.C. § 6321 (leave for veterans to attend military funerals); *id.* § 6322(a)
(court leave); *id.* § 6323(a)(1) (military leave); *id.* § 6326(a) (leave for funerals of
armed forces relatives); *id.* § 6327(a) (bone marrow or organ donor leave).  The
sixth, concerning relief from work on a holiday, entitles employees "the same pay for
that day as for a day on which an ordinary day's work is performed," 5 U.S.C.
§ 6104, indistinguishable from the "customary and regular pay" entitlement which
includes any additional or premium pay, *see Lanehart*, 818 F.2d at 1583.

      All told, four statutes entitle plaintiffs to receive their full pay, including any
additional pay, when leave is taken; eight statutes protect PAs and EFDAs from a
reduction in pay when leave is taken, unless section 7421(a) regulations state to the
contrary; and six statutes do the same for RNs, unless displaced by section 7421(a)
regulations.  As was the case in *Curry*, the entitlement of RNs to paid annual and
sick leave, including whether this contains additional pay amounts, must rest on
the VA's regulations.  *See Curry*, 66 Fed. Cl. 604–06.  Before considering the
handbook provisions regarding leaves of absence and additional pay, a few words
about interpreting regulations in this context are in order.

      As the Court recognized in *Curry*, following the Federal Circuit's lead in
*Lanehart*, "a regulation that speaks to this issue with clarity" is needed to displace
an employee's statutory entitlement to take leave with the pay he would otherwise
have received.  *Curry*, 66 Fed. Cl. at 606; *see also Lanehart*, 818 F.2d at 1582
(recognizing that "when Congress has intended to exclude certain types of
remuneration from a pay statute it has done so with clarity").  After a thorough
canvassing of the history, the Federal Circuit concluded "that when an entitlement
to paid leave refers to pay, this 'has consistently been construed for more than a
century as encompassing the total compensation or remuneration normally and
regularly received by an employee.'"  *Curry*, 66 Fed. Cl. at 606 (quoting *Lanehart*,
818 F.2d at 1581).  In other words, the Federal Circuit has identified a background
principle concerning leave with pay laws that is presumed to have been utilized
absent a departure stated with clarity.

      This clarity requirement is not that unusual, and when placed in the context
in which it developed it can readily be appreciated.  The *Lanehart* decision

considered whether four leave with pay statutes (annual, sick, court and military leave) entitled firefighters to overtime pay, even if the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, did not include leave hours in its calculations. *Lanehart*, 818 F.2d at 1575–76. The Federal Circuit noted that for the private sector, under the Secretary of Labor's regulations the question is determined by private contract, not by FLSA. *Id.* at 1582. It then analogized the leave with pay statutes, explaining "[t]he contract between the government and its employees taking jury or military duty leave is that they will not sustain a loss or reduction in their regular compensation." *Id.* Of course, government employees serve by appointment rather than under contract, *see Hamlet*, 63 F.3d at 1101, yet there are circumstances in which employees' rights have already vested and "a clear expression of congressional intent" is required for their deprivation due to potential constitutional infirmities, *United States v. Larionoff*, 431 U.S. 881, 879 (1977). When the government does contract for goods or services, "its rights and duties therein are governed generally by the law applicable to contracts between private individuals," *Lynch v. United States*, 292 U.S. 571, 579 (1934), including the rule of *contra proferentem*, in which some ambiguities in contract language are held against the drafter, *see, e.g.*, *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1317 (Fed. Cir. 2009) (citing *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999)).[15] The clarity requirement can also be viewed as a relative of the canon "that statutes will not be interpreted as changing the common law unless they effect the change with clarity." Scalia & Garner, *supra*, at 318; *see United States ex rel. Cimino v. IBM Corp.*, 3 F.4th 412, 419 (D.C. Cir. 2021).

In any event, the Court will follow the approach from *Curry* and *Lanehart* when interpreting the handbook provisions to determine the extent to which additional pay is owed when paid leave is taken, requiring "the Secretary [to] exercise his discretion in this area with clarity." *Curry*, 66 Fed. Cl. at 606 (citing *Lanehart*, 818 F.2d at 1582. As the specific statutory authority used by the VA was the power to prescribe the conditions of leaves of absence, *see* 38 U.S.C. § 7421(a), and in light of the Federal Circuit's recognition that entitlements to premium pay when on leave have traditionally been rooted in the leave provisions and not the premium pay provisions, *see, e.g.*, *Acton v. United States*, 932 F.2d 1464, 1466 (Fed. Cir. 1991), we will start with the VA Handbook 5011 provisions regarding plaintiffs' rights to paid leave.

---

[15] The fact that the plaintiffs are not policymakers, but rather are medical professionals providing health care services to veterans, makes the clarity requirement particularly fitting, as these are services which could actually have been the subject of a government contract.

### a.  VA Handbook 5011.

The handbook containing "instructions and mandatory procedures for . . . [VA] policy on . . . the administration of leave systems within the VA" is VA Handbook 5011.  VA Handbook 5011/12, Pt. I, ¶ 1 (Jan. 12, 2007); *see also id.* ¶ 2.c (referencing 38 U.S.C. § 7421).  Part III of this handbook contains the leave provisions, which are described as "a regulation pursuant to 38 U.S.C., Section 7421."  VA Handbook 5011/16, Pt. III, Ch. 1, ¶ 1.b(1) (Apr. 4, 2010); *see supra* note 12.  Chapter 3 of this part contains the "policies and procedures for leave administration for" RNs, PAs, and EFDAs.  *See* VA Handbook 5011, Pt. III, Ch. 3, ¶ 1.a (Apr. 15, 2002).  Chapter 2 contains the policies for title 5 employees of the VA, *see* VA Handbook 5011/18, Pt. III, Ch.2, ¶ 1 (Oct. 13, 2011), which are sometimes incorporated by reference in Chapter 3 provisions.

In Chapter 3, the annual and sick leave provisions are contained in paragraphs four through six.  *See* VA Handbook 5011, Pt. III, Ch. 3, ¶¶ 4–6.[16]  These provisions have no explanation concerning the amount of pay to be received when these leaves are taken, and do not even refer to the leave as "with pay."  Contrasts are drawn with "leave without pay," *see, e.g.*, VA Handbook 5011/32, Pt. III, Ch. 3, ¶¶ 4.g(2), 4.h, 5.i(4) (July 26, 2018), and there is a generic reference to "leave with pay status" for accrual purposes, *id.* ¶6.b.  From this, it is implicit that annual and sick leave are not without pay, but the Court can find no express statement whether the leave is pay, with basic pay, or with no reduction or loss in pay.

This handbook takes a different approach regarding the other types of paid leave at issue in this case.  For two types of absence, leave for funerals for armed forces relatives and leave for veterans to attend military funerals, the VA applies the policies in Chapter 2 of Part III, pertaining to title 5 employees.  VA Handbook 5011/28, Pt. III, Ch. 3, ¶ 9.o(5), (9) (Oct. 12, 2016).[17]  The Chapter 2 provisions specify that these excused absences are without loss of pay.  *See* VA Handbook 5011/28, Pt. III, Ch. 2, ¶ 12.d ("excused from duty without loss of pay" for military funerals), ¶ 12.t ("excused absence without . . . loss of pay" for funeral of armed

---

[16]  These paragraphs of the current version of VA Handbook 5011 are contained on individual pages (III-48 through III-60a) that have been amended through the issuance of various changes:  5011/10 (Dec. 6, 2006); 5011/23 (Nov. 20, 2012); 5011/24 (Jan. 3, 2013); 5011/31 (Mar. 27, 2018); 5011/32 (July 26, 2018); and 5011/33 (Dec. 14, 2018 and Dec. 26, 2018).  It appears that the pertinent characteristics of these provisions have not changed since the version of these paragraphs in force in 2012, which was primarily the product of change 5011/2 (June 16, 2004).

[17]  These same provisions were included in change 5011/6 (Jan. 26, 2006).

forces relative). Concerning court leave, RNs, PAs and EFDAs "are eligible and shall be granted court leave in the same manner as other eligible Federal employees." VA Handbook 5011/32, Pt. III, Ch. 3, ¶ 7.b (July 26, 2018).[18] Other federal employees are, of course, "entitled to leave, without loss of, or reduction in, pay." 5 U.S.C. § 6322(a). Similarly, plaintiffs are "eligible for and shall be granted military leave in the same manner as other Federal employees," and "[t]he granting and charging of military leave contained in chapter 2" applies. VA Handbook 5011/32, Pt. III, Ch. 3, ¶ 7.a(1) (July 26, 2018).[19] In Chapter 2, the VA expressly provides that "[a]n employee's civilian pay remains the same for periods of military leave under 5 U.S.C. 6323(a) and (c), including any premium pay an employee would have received if not on military leave." VA Handbook 5011, Pt. III, Ch. 2, ¶ 9.b (Apr. 15, 2002).[20] And when RNs, PAs, and EFDAs take leave to serve as a bone-marrow or organ donor, the handbook specifies that this leave is "without . . . reduction in pay." VA Handbook 5011/28, Pt. III, Ch. 3, ¶ 9.n (Oct. 12, 2016).[21]

Of the four leave provisions that cannot be modified under section 7421, two are the subjects of express provisions in the handbook. Disabled veteran leave "must be granted" to RNs, PAs, and EFDAs. VA Handbook 5011/29, Pt. III, Ch. 3, ¶ 7.e(1) (July 5, 2017).[22] And for absences due to weather and safety issues, the policies applicable to title 5 employees are applied to plaintiffs. VA Handbook 5011/28, Pt. III, Ch. 3, ¶ 9.o(12) (Oct. 12, 2016). The title 5 provision states that this "leave may be granted at the leave approving official's discretion," subject to certain determinations. VA Handbook 5011/34, Pt. III, Ch. 2, ¶ 12.u(1)(b) (Oct. 25, 2019).[23]

---

[18] This same provision appeared in the initial version of VA Handbook 5011, issued April 15, 2002.

[19] The initial version of the handbook also provided that RNs, PAs and EFDAs were "eligible for and shall be granted military leave in the same manner as other Federal employees." VA Handbook 5011, Pt. III, Ch. 3, ¶ 7.a(1) (Apr. 15, 2002).

[20] When on leave under 5 U.S.C. § 6323(b), this pay is reduced by the amount of military pay received. VA Handbook 5011, Pt. III, Ch. 2, ¶ 9.b (Apr. 15, 2002).

[21] This provision was included in the original version of VA Handbook 5011, issued April 15, 2002.

[22] These positions "are considered covered employees for the purpose of disabled Veteran leave." VA Handbook 5011/34. Pt. III, Ch. 3, ¶ 7.e (Oct. 25, 2019).

[23] Although the granting of weather and safety leave, as well as administrative leave and investigative and notice leave, is subject to discretion, when granted it

Provisions regarding holidays are contained in Part II of Handbook 5011, which covers hours of duty. In the chapter governing RNs, PAs, and EFDAs, the relevant provision states "[e]mployees shall be excused to the extent possible for observance of" listed federal holidays and other designated non-workdays. VA Handbook 5011/28, Pt. II, Ch. 3, ¶ 3 (Oct. 12, 2016).

## **b.  VA Handbook 5007.**

Having considered what the VA has specified in its handbook concerning the various leaves of absence at issue in this case, we now turn to the handbook which regulates the administration of pay, VA Handbook 5007, for its provisions regarding the additional pay sought by plaintiffs.

The Court starts with the easiest of the issues presented. The complaint clearly seeks compensation for the loss of the overtime premium associated with the regular and customary work of plaintiffs when they have taken paid leave or are absent due to a holiday. Compl. ¶¶ 1, 3, 9, 15–17, 28, 41, 43, 46, 48; *see* 38 U.S.C. §§ 7453(e)(1), 7454(a). Plaintiffs asserted their right to this additional pay in their briefing and relied heavily on the Federal Circuit's decision in *Lanehart*, which determined that federal employees taking paid leave were owed overtime pay for leave hours. *See* Pls.' Br. at 2, 4, 6–7, 12; Pls.' Reply at 1, 5–6, 15–16; *see also Lanehart*, 818 F.2d at 1583. Defendant's only references to overtime in its briefing were in a parenthetical description of and a quote from *Lanehart*. *See* Def.'s Br. at 7; Def.'s Reply at 7. Defendant has identified no handbook provision eliminating paid leave hours from the computation of overtime. Chapter 2 of Part V of VA Handbook 5007 contains the overtime provisions. The portion which concerns RNs, PAs, and EFDAs states "[l]eave without pay is not included when computing hours of work for overtime purposes." VA Handbook 5007/51, Part V, Ch. 2, ¶ 2.b.(2)(c) (Aug. 3, 2017). Since its inception in 2002, VA Handbook 5007 has included this provision. *See* VA Handbook 5007, Part V, Ch. 2, ¶ 2.b.(2)(a) (Apr. 15, 2002). As the regulation excludes only leave without pay hours, and does not exclude leave with pay hours or holidays, plaintiffs who regularly and customarily worked overtime are entitled to overtime additional pay when on paid leave or absent due to holidays.

Next, we turn to night differential pay. The VA continues to employ an "eight-hour rule," which the Court applied in *Curry*, 66 Fed. Cl. at 607. Under this rule, "[w]hen on annual or sick leave, a nurse, PA or EFDA shall be entitled to night differential pay otherwise appropriate, provided the total amount of such leave in a pay period, including both night and day hours, is fewer than 8 hours." VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.a(1) (Mar. 24, 2014). The handbook specifically provides that plaintiffs "shall be entitled to night differential pay otherwise

---

must be "without loss of or reduction in" pay. *See* 5 U.S.C. §§ 6329a(a)(1)(A), 6329b(a)(7)(A), 6329b(a)(8)(A), 6329c(b).

appropriate" when they are "not required to perform service on a holiday or the day observed as a holiday." *Id.* ¶ 1.a(2). [24] Thus, it is beyond question that this additional pay must be paid when plaintiffs are excused due to a holiday.

The eight-hour rule, as a condition of leaves of absence, is a proper exercise of the section 7421(a) authority. Moreover, a variant of this rule was described by the Federal Circuit as an example of Congress "know[ing] how to limit the amount of premium pay earned by an employee while on authorized leave." *Armitage*, 991 F.2d at 750. By its own terms, however, it only limits the night premium in connection with annual and sick leave, and not the other forms of leave at issue in this case. Nor does it count the hours associated with other forms of leave towards the eight-hour limit---the provision, after mentioning "annual and sick leave," then refers back to "*such* leave" when defining the relevant eight hours. Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.a(1) (emphasis added).

As we have seen, plaintiffs are statutorily entitled to pay, without loss or reduction, when taking disabled veteran leave, administrative leave, investigative and notice leave, and weather and safety leave. *See* 5 U.S.C. §§ 6329, 6329a, 6329b, 6329c. And VA regulations entitle them to pay without loss or reduction, or to pay including premium pay, when using veterans' leave to attend military funerals, court leave, military leave, leave for funerals of armed forces relatives, and bone-marrow or organ donor leave. *See* VA Handbook 5011, Pt. III, Ch. 2, ¶¶ 9.b, 12.d, 12.t; *id.* Ch. 3, ¶¶ 7.a(1), 7.b, 9.n, 9.o(5), 9.o(9); *see also* 5 U.S.C. § 6322(a). The VA's night differential regulation does not exclude this premium when plaintiffs are using these forms of paid leave, nor does it place their hours within the eight-hour rule. Accordingly, plaintiffs are correct in claiming an entitlement to the night differential when taking these other types of leave, or when excused due to a holiday.[25] But under the regulation, the eight-hour rule applies to eliminate the additional night pay associated with annual and sick leave hours when eight or more eight hours of annual and sick leave are taken in a pay period. *See* VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.a(1).

---

[24] These provisions are still in force. *See* VA Handbook 5007/57, Pt. V, Ch. 6, ¶ 1.a(1)–(2) (Feb. 4, 2020).

[25] It is not clear that defendant is entirely disputing this aspect of plaintiffs' case. In connection with its motion for summary judgment, it submitted a demonstrative exhibit which suggests that it does not count the hours connected with several forms of leave, including court, military, and administrative leave, toward the eight-hour rule. *See* Def.'s App. 3 & 4, ECF No. 24-1; Def.'s Br. at 3; Tr. at 56–57.

This brings us to the thorniest portion of this matter, plaintiffs' claims regarding Saturday premium pay. As was noted above, after explaining how this twenty-five percent premium is calculated, the handbook provision states:

> Weekend pay is payable only during periods when work is performed. Weekend pay is therefore not payable for periods of paid leave or excused absence including annual leave, sick leave, compensatory time off, credit hours military leave, court leave excused absence on a holiday, or time off as an incentive or performance award, etc.

VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.b (Mar. 24, 2014).

Plaintiffs seem to maintain that the first sentence represents either the VA's misinterpretation of the additional pay statutes---38 U.S.C. §§ 7453–54---to forbid the premium when leave is taken, or its refusal to recognize the guarantees of full pay under the leave statutes. *See* Pls.' Br. at 10; Pls.' Reply at 12; Tr. at 43–45. Since the *Curry* case was, in part, precipitated by a VA bulletin that misinterpreted a statutory provision to preclude this same additional pay, *see Curry*, 66 Fed. Cl. at 600–01, plaintiffs' reading of this provision is certainly understandable. And the use of informal rulemaking by the VA has eschewed the normal avenue for clearing up such questions. But, as we have seen above, the VA may regulate in this manner when the subject concerns agency management or personnel. *See Hamlet*, 63 F.3d at 1103; 5 U.S.C. § 553(a)(2). Thus, this sentence may do far more than merely interpret the additional pay or the leave statutes, as the VA is empowered to adopt its own policies regarding the conditions of leaves of absence, displacing many of the title 5 provisions. *See* 38 U.S.C. § 7421(a). It has invoked this authority regarding these handbook provisions. *See* VA Handbook 5007/30, Pt. I, ¶¶ 1, 3 (Dec. 6, 2007); *see also* VA Handbook 5007, Pt. V, Ch. 1, ¶ 1 (Apr. 15, 2002).

Accordingly, the first sentence of this portion of the handbook appears to set forth a policy of the VA concerning this additional pay, with the second sentence explaining its extent. But the interpretation of these sentences is not straight-forward, for several reasons. First, this is not the only place where the VA has issued regulations concerning leaves of absences. Here, it seems to confine weekend pay to hours worked. But in Handbook 5011, the VA, using this same regulatory authority, *see* VA Handbook 5011/16, Pt. III, Ch. 1, ¶ 1.b(1) (Apr. 4, 2010) (invoking 38 U.S.C. § 7421), issued provisions regarding five types of paid leave for which plaintiffs are promised no loss or reduction in pay, with one even going so far as to expressly mention premium pay. *See* VA Handbook 5011, Pt. III, Ch. 2, ¶¶ 9.b, 12.d, 12.t; *id.* Ch. 3, ¶¶ 7.a(1), 7.b, 9.n, 9.o(5), 9.o(9).

The Court cannot follow the usual expedient of giving precedence to later-enacted provisions, due to the VA's bewildering practice of frequently reissuing individual handbook pages with slight amendments. For instance, after the VA seemingly issued the weekend pay rule in 2012, *see supra* note 5, it reissued pages

containing the two funeral leave policies and the bone-marrow and organ donor leave policy in 2016, *see* VA Handbook 5011/28, Pt. III, Ch. 3, ¶¶ 9.n, 9.o(5), 9.o(9) (Oct. 12, 2016) and the court and military leave policies in 2018, *see* VA Handbook 5011/32, Pt. III, Ch. 3, ¶¶ 7.a(1), 7.b (July 26, 2018).[26]  Nor, for that matter, is the sentence stating that this premium "is payable only during periods when work is performed," VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.b, necessarily in conflict with these other provisions promising no reduction in pay.  It is not unheard of for the same authority to create premium pay under terms which only apply to hours worked, but to create a leave pay regime that includes this premium pay---that, after all, was the point of *Lanehart*, 818 F.2d at 1578, 1582–83.

And, as we addressed earlier, the policy of confining weekend pay to hours worked (at least so far as Saturday pay is concerned) cannot extend to paid leave under four statutory provisions which take precedence over contrary VA regulations, due to section 7425(b) references.  *See* 38 U.S.C. § 7425(b).  The VA has no authority to reduce the pay plaintiffs would otherwise have received had they not taken administrative leave under 5 U.S.C. § 6329a(d); investigative or notice leave under 5 U.S.C. § 6329b(i); weather and safety leave under 5 U.S.C. § 6329c(e); and, since September 7, 2018, disabled veteran leave under 5 U.S.C. § 6329(d)(1)(B).  Unless the Court has warrant to rewrite this sentence to add "except when Congress says otherwise," it must be interpreted in a way that accommodates this reality.

The next sentence from this provision hardly clarifies matters.  It contains a "therefore" purporting to follow the rule set in the preceding sentence, rather than professing its own.  Thus, by beginning "[w]eekend pay is therefore not payable for periods of paid leave or excused absence," VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.b, it conceptually leaves open the possibility that what is promised in VA Handbook 5011, as well as sections 6329–29c, is not weekend pay but rather leave pay that is not reduced (or, in the case of military leave, is called premium pay).  After clear references to "annual leave" and "sick leave," and to a matter that is not at issue ("compensatory time off"), the sentence turns into a word salad, listing "credit hours military leave" and "court leave excused absence on a holiday" as among the examples of grounds for non-payment.  *Id.*  Perhaps this just reflects poor punctuation and typographical errors, but the VA's use of informal rulemaking has resulted in the absence of any contextual narrative that can be used to inform the meaning of the sentence.  *Cf. Bossenbroek*, 169 Fed. Cl. at 429 (explaining extra-textual sources can be used in "correcting obvious typographical errors").  Moreover,

---

[26]  And, of course, the weekend pay rule page has been reissued a few times, most recently in 2020.  *See* VA Handbook 5007/57, Pt. V, Ch. 6, ¶ 1.b (Feb. 4, 2020).

despite amending the paragraph containing this sentence as recently as 2020, the VA did not see fit to make any corrections to this sentence.  *See supra* note 26.

Where these sentences concerning weekend pay are clear are in stating that it is not payable when an employee takes annual or sick leave.  These leave provisions are clearly spelled out, and there are no promises of any particular level of pay to be found in the complementary regulations in VA Handbook 5011.  *See* VA Handbook 5011, Pt. III, Ch. 3, ¶¶ 4–6.  But the weekend pay provisions lack the clarity required to overcome the presumption that promises of leave with pay, or leave with no loss of reduction in pay, entitle employees to the same pay they would have received had they worked.  These specific promises are made to RNs, PAs, and EFDAs in the Handbook 5011 provisions concerning the other forms of leave at issue in this case, and in the sections of title 5 that the VA cannot lawfully contradict.  And they are contained in the holiday statute guarantee of "the same pay for that day as for a day on which an ordinary day's work is performed," 5 U.S.C. § 6104, which Court cannot find clearly overcome by a vague reference to "court leave excused absence on a holiday," VA Handbook 5007/47, Pt. V, Ch. 6, ¶ 1.b.  Limits on paid leave must speak with clarity, *see Curry*, 66 Fed. Cl. at 606 (citing *Lanehart*, 818 F.2d at 1582), and regarding these forms of paid leave or excused absence, the VA's regulations do not.  Accordingly, defendant is correct that, under these regulations, Saturday premium pay is not available when plaintiffs use annual or sick leave, and plaintiffs are correct that they are entitled to Saturday premium pay when using the other forms of paid leave or excused absence at issue in this case.

## III.  CONCLUSION

For the foregoing reasons and as described above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** plaintiffs' motion for partial summary judgment, and **GRANTS-IN-PART** and **DENIES-IN-PART** defendant's cross-motion for summary judgment.  The parties shall file a joint status report, proposing a schedule for further proceedings, on or by **Thursday, June 20, 2024**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge