# In the United States Court of Federal Claims

No. 18-1292C
(Filed November 5, 2025)

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
DANUTA YSLA,                     *
HENRIETTA HARGRESS DAVIS,        *
GLORIYADI ECHEVARRIA,            *
ARLENE FRANCES HOBBS,            *
TIERRA L. KELLY,                 *
JULIA M. MULDROW,                *
on behalf of themselves and      *
all others similarly situated,   *
                                 *
               Plaintiffs,       *
                                 *
     v.                          *
                                 *
THE UNITED STATES,               *
                                 *
               Defendant.        *
                                 *
                                 *
* * * * * * * * * * * * * * * * *
```

 *Roger J. Marzulla*, Marzulla Law, LLC, with whom were *Nancie G. Marzulla*, *Sebastian E. Ray*, and *Ira M. Lechner*, all of Washington, D.C., for plaintiffs.

 *David M. Kerr*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Deputy Director, all of Washington, D.C., for defendant.

## ORDER

WOLSKI, Senior Judge.

 In this class action lawsuit seeking back pay for current and former employees of the Department of Veterans Affairs, plaintiffs have moved to reopen

the notice and opt-in period for 45 days because 7,058 potential class members' notice mailings were returned as undeliverable. Pls.' Mot. to Reopen Notice and Opt-In Period for Potential Class Members Whose Mail Was Returned as Undeliverable (Pls.' Mot.), ECF No. 74 at 1. This extended period would allow the class administrator to conduct a new address search to correct these individuals' mailing addresses and subsequently mail new notices to the affected individuals. *Id.* at 2. Defendant does not object to the reopening of the notice and opt-in period for these individuals nor to the plaintiffs' proposed course of action for the class administrator. *See* Resp. to Pls.' Mot. (Def.'s Resp.), ECF No. 76 at 2. The Court finds the plaintiffs' proposal to give these potential class members the opportunity to opt into the class is acceptable and supported by good cause.

Defendant, however, objects to one potential consequence of reopening the opt-in period. The day after filing their motion, the plaintiffs filed their Notice of Opt-In Class Members (Pls.' Not.), ECF No. 75, which identified 12,775 individuals who had submitted opt-in forms to join the class by the August 6, 2025 deadline, and another 468 individuals who submitted opt-in forms after the deadline. *See id.* at 1 & Exs. 1 & 2. In this notice, plaintiffs stated their position was that the 468 late submitters "should be included in the class of plaintiffs." *Id.* at 1. Defendant objects to letting this group benefit from the extended deadline, insisting that their "forms must be considered untimely," but does not provide any argument that their inclusion would unduly prejudice or burden defendant. *See* Def.'s Resp. at 2. In reply, the plaintiffs argue that the late submitters' "inclusion would not prejudice the proceedings in this case because the Government has identified these individuals as eligible for inclusion in the class under the Court's class certification order." Pls.' Reply in Support of Mot. (Pls.' Reply), ECF No. 77 at 2.

As the plaintiffs note, courts have "broad discretion" over class action procedures. *Id.* at 2 & n.2 (quoting *Smith v. United States*, 157 Fed. Cl. 135, 137 (2021) (quoting *Wolfchild v. United States*, 68 Fed. Cl. 779, 797 (2005))). This stems from our "equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3d Cir. 2003) (citations omitted). Here, the Court must determine whether accepting or rejecting the late opt-in forms would do more to promote judicial economy and fairness to the litigants.

While it is probably not uncommon for our court to allow potential class members to opt in after an initial deadline for doing so has passed, even over government objections, *see, e.g.*, *Austin v. United States*, No. 13-446C, ECF No. 124 at 1–2 (Fed. Cl. Apr. 10, 2019) (extending deadline by sixty days),[1] the Court is not aware of any such decisions in reported orders. We can look to the district courts

---

[1] The settlement of the *Austin* class action included individuals whose claims were submitted even after the extended deadline. *Austin v. United States*, No. 13-446C, 2021 WL 4006026, at *2 (Fed. Cl. Sept. 2, 2021).

for some guidance, as they employ a version of opt-in procedures in collective actions brought under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–19.  *See* 29 U.S.C. § 216(b); *Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008) (discussing district court procedures).

Although there is no set formula district courts use to determine when to allow plaintiffs to opt in after a court-adopted deadline, several factors have been frequently considered.  These include "whether 'good cause' exists"; "prejudice to the defendant;" "how long" it had been "after the deadline passed" when the individuals sought to opt in; and "judicial economy." *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009) (collecting cases).  Balancing these factors, the Court agrees with plaintiffs that the 468 individuals who submitted late opt-in forms should be included in the class.

While plaintiffs have not addressed the question of good cause for the late submissions, this absence is not dispositive of the ultimate matter, *see id*. Moreover, under these circumstances, in which a mailing list of over 155,707 home addresses for potential class members resulted in 7,058 returned notices, *see* Pls.' Mot. at 2–3, it is reasonable to presume that a good portion of the 468 late submissions are from individuals whose mail was belatedly forwarded to a current address.

Considering the next factor, the Court notes that that the government did not claim any prejudice from the inclusion of these 468 potential class members.  *See* Def.'s Resp. at 1–2.  This is understandable, as it is hard to see how adding 468 individuals to a class which already numbers 12,775---a mere 3.7% increase in the size of the class---would impose much of a burden on the government.  *See, e.g.*, *Ruggles*, 687 F. Supp. 2d at 37 (allowing late submitters to increase class size by more than 3%); *Robinson–Smith v. Gov't Empl. Ins. Co.*, 424 F. Supp. 2d 117, 124 (D.D.C. 2006) (accepting late forms as timely when new plaintiffs were a small percentage of the total).  The government, after all, has agreed to a process that may increase the class by much more than the late group---if the potential members whose notices were undeliverable are found and they opt in at the same rate as the rest did.  The Court is of the opinion that the sort of prejudice that could weigh against allowing latecomers to join a class is that of the "undue" variety that could thwart an attempt to amend a pleading under Rule 15,[2] *see Foman v. Davis*, 371 U.S. 178, 182 (1962), which "may be found when an amended pleading would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." *Delpin Aponte v. United States*, 83 Fed. Cl. 80, 92–93 (2008)

---

[2] *See* Rule 15(a)(2) of the Rules of the United States Court of Federal Claims (RCFC), providing that "[t]he court should freely give leave [to amend a pleading] when justice so requires."

(quoting *Cooke v. United States*, 79 Fed. Cl. 741, 742–43 (2007)).[3] Nothing of the sort is presented here, as the individuals seeking to join were known to the government, and the calculation of damages is all that remains in this matter.

On the question of timing, all the late submissions at issue had been received within one month of the deadline---a timeline that supports allowing their inclusion in the class. *See Ruggles*, 687 F. Supp. 2d at 37 (allowing inclusion when all forms but one were submitted within a month of deadline); *Monroe v. United Air Lines, Inc.*, 94 F.R.D. 304, 305 (N.D. Ill. 1982) (allowing inclusion when submissions were received "within approximately one month after the deadline"). And regarding judicial economy, the potential class members in question could bring cases identical to this one against defendant, all of which might be joined with this lawsuit. *See* RCFC 40.2. Judicial economy favors their inclusion here. *See Raper v. Iowa*, 165 F.R.D. 89, 92 (S.D. Iowa 1996) (finding judicial economy favored the inclusion of additional plaintiffs who would otherwise file separate actions that would likely be consolidated with the case at hand); *Ruggles*, 687 F. Supp. 2d at 37–38 (same).

A deadline for opting into a class action should not be viewed as something that is sacrosanct, like a statute of repose which absolutely bars claims. *Cf. Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507, 511 (2017) (describing the purpose behind statutes of repose). Rather, the adoption of such "cutoff dates" is "to expedite disposition" and allow a case "to proceed in diligent fashion." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989); *see also Monroe*, 94 F.R.D. at 305 (reasoning that courts set such deadlines as a "practical matter, to permit ascertainment of the actual parties to the litigation well in advance of trial," and should not be beholden to deadlines "beyond [their] reason for existence").

Based on the above, the Court concludes that it would be particularly inappropriate to deny the inclusion of late submitters of opt-in forms whenever the deadline for joining a class is being extended or reopened for other potential class members who did not receive the initial notice. *See Elec. Welfare Tr. Fund v. United States*, No. 19-353C, ECF No. 92 at 5 (Nov. 11, 2022) (explaining that, in these circumstances, "denying willing potential class members entry into the class would be inefficient and would subvert the goal of a legitimate class action") (citing *Am. Pipe & Contr. Co. v. Utah*, 414 U.S. 538, 553 (1974)). Since new deadlines necessarily delay proceedings to allow additional individuals to participate in the

---

[3] Another relevant analogue is the Rule 24 standard for permissive intervention, which is whether "intervention will unduly delay or prejudice the adjudication of the original parties' rights." RCFC 24(b)(3); *see Belton Indus. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993) (explaining that undue prejudice includes forcing a party to "address new issues" after disposition, applying the Court of International Trade's version of the rule).

efficient class action process, limiting the pool of potential new class members would limit the efficiencies of this process with no apparent offsetting benefit.

Accordingly, the Court **GRANTS** the plaintiffs' motion to reopen the class notice and opt-in period and allows the class to include the 468 individuals whose submissions were late, *see* Pls.' Not., Ex. 2, as well as any other potential members who submit forms before the new deadline.  The revised schedule, adjusted for the time the motion was being considered by the Court, is as follows:[4]

- **December 22, 2025**: Opt-in deadline.
- **January 16, 2026**: Class counsel to provide list of putative opt-ins.
- **February 23, 2026**: Completion of discovery regarding amounts owed to each class member.
- **March 16, 2026**: Parties file a joint status report proposing how the case should proceed.

**IT IS SO ORDERED.**

s/ Victor J. Wolski<br>
**VICTOR J. WOLSKI**<br>
Senior Judge

---

[4] In their motion, plaintiffs raised the possibility that the Department of Veterans Affairs "could assist in finding better addresses for these individuals" whose notices were returned as undeliverable.  Pls.' Mot. at 2.  If the on-going appropriations lapse and resulting government shutdown preclude this assistance, the opt-in deadline could be further revised to facilitate the efficient use of the class vehicle.